594

WILEMAN, Respondent, vs. LADD and wife, Appellants.

*November 10—December 6, 1932.*

596

For the appellants there was a brief by *Richmond, Jackman, Wilkie & Toebaas* and *F. Halsey Kraege,* all of Madison, and oral argument by *Mr. Kraege.*

For the respondent there was a brief by *Blanchard & Slagg* of Edgerton, and oral argument by *Stanley W. Slagg.*

ROSENBERRY, C. J.   The question presented is whether or not there was a breach of the covenant against incumbrances on account of which the plaintiff may maintain this action. It is conceded that a covenant against incumbrances if breached at all is breached when the deed is given.   It is also conceded that the covenant is one which runs with the land. *Olson v. Lindsay,* 190 Wis. 182, 208 N. W. 891.   It is equally true that if breached when made, a technical breach of a covenant against incumbrances gives rise only to a cause of action for nominal damages and that no action lies for substantial damages in advance of eviction or until the owner of the land entitled to the benefit of the covenant pays

off the incumbrance. *Estate of Hanlin: Killilea v. Douglas,* 133 Wis. 140, 113 N. W. 411.

This leaves for determination only the question of whether or not there was at the time of the execution and delivery of the deed on the 6th day of August, 1922, any outstanding incumbrance upon the premises conveyed. In *Olson v. Lindsay, supra,* it was said :

"The covenant is an agreement between the covenantor and his grantee. The scope and extent of the covenant is to be determined by the circumstances and the facts existing at the time the covenant is made and should be construed to express the understanding and agreement of the immediate parties to the covenant, and this is especially true where the record furnishes no evidence as to whether liens such as these were incumbrances upon the title which the grantor was conveying."

At the time the deed was executed and delivered the commissioners had filed their preliminary report which had been confirmed by the court and the commissioners were directed to proceed with the work of draining the lands. The proceedings to borrow money were not completed until March 31, 1925, two and one-half years after the delivery of the deed, so that at the time the land was conveyed no assessment had been made, no liabilities incurred, and there was merely the inchoate right of the district to proceed with the drainage. This was a right which might thereafter be exercised or it might not. It was at best a mere potentiality. The incumbrance which the grantee paid off in 1931 was not a thing in existence at the time the deed was given. A bare statement of the facts would seem to be sufficient to dispose of the issue raised in this case. It has been held (*In re Dancy Drainage District,* 199 Wis. 85, 225 N. W. 873) that the lien of a tax levied on account of a drainage is a special assessment lien and that it is subordinate to the lien for general taxes.

Sec. 1379 (22) of the Statutes of 1915, in force when the district was organized, and sec. 1379 (22) of the Statutes of 1921, in force when the covenants were made, provided:

"Assessments for construction, additional assessments and assessments for repairs and interest thereon shall be a first lien upon the lands assessed from the time of recording the order of confirmation of the same in the office of the register of deeds of the county in which the lands are situated until paid, and shall take precedence over all other liens and mortgages, whether accruing prior to the time of the filing of the petition under the drainage district law or not, excepting only liens for general taxes."

This provision seems to be definite and explicit and to fix the time when the lien of the tax attaches. No order for an assessment was made by the commissioners or confirmed by the court until eight years after the execution and delivery of the deed. There was nothing in existence on the date of the execution of the deed which constituted or could constitute an incumbrance upon the premises conveyed. While there is a technical distinction between *lien* and *incumbrance,* incumbrance is the broader term and includes lien.

The trial court was in error in holding that under the facts stated in the complaint there was a breach of the covenant against incumbrances when made. There being no such breach, the plaintiff's cause of action fails.

*By the Court.*—The order appealed from is reversed, and cause remanded with directions to enter an order sustaining the demurrer to the plaintiff's complaint and for further proceedings according to law.